**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| VIACOM INTERNATIONAL INC.<br><br>Plaintiff,<br>v.<br><br>ARMSTRONG INTERACTIVE, INC. and CHARLES ARMSTRONG,<br><br>Defendants. | **CIVIL ACTION NO. 18-CV-_________**<br><br>**COMPLAINT** |

Plaintiff Viacom International Inc. ("Plaintiff" or "Viacom"), by and through its undersigned attorneys Davis Wright Tremaine LLP, as and for its complaint against Armstrong Interactive, Inc. ("AI") and Charles Armstrong (collectively, "Defendants"), respectfully alleges as follows, on personal knowledge as to Viacom's own activities and on information and belief as to the activities of others:

## THE PARTIES

1. Plaintiff is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in New York, New York.

2. Upon information and belief, AI is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Somers, New York.

3. Upon information and belief, Mr. Armstrong is the owner, President and Chief Executive Officer of AI and has served in this capacity since the formation of AI in 2000. As such, Mr. Armstrong runs the operations of AI and is the principal architect of Defendants' illegal scheme to trade upon the goodwill associated with the DOUBLE DARE Mark.

## JURISDICTION AND VENUE

4. Plaintiff seeks a declaration of its rights, pursuant to 28 U.S.C. §§ 2201(a) and 2202, to resolve an actual controversy within this Court's jurisdiction. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, as this action arises under the trademark laws of the United States.

5. The Court has personal jurisdiction over Defendants because Defendants' principal place of business is located in the State of New York. Moreover, upon information and belief, Defendants engage in continuous and systematic business activities in the State of New York by, among other things, producing television programming in New York.

6. Venue is proper pursuant to 28 U.S.C. § 1391(b) and (c) because AI is headquartered in this Judicial District and, upon information and belief, Mr. Armstrong is a resident of the State of New York in which this Judicial District is located. Venue is further proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the causes of action alleged herein occurred in this Judicial District.

## GENERAL ALLEGATIONS

### I.     Viacom Has Priority of Use of the Famous DOUBLE DARE Marks

7. On October 6, 1986, Nickelodeon, an American cable and satellite television network for children and families owned by Viacom, premiered a game show series, under the trademark DOUBLE DARE ("DOUBLE DARE Mark"), on which two teams compete to win cash prizes by answering trivia questions and completing messy stunts known as physical challenges.

8. Nickelodeon was (and remains) an extremely popular television network. As of September 2017, Nickelodeon was the number-one-rated advertising-supported basic cable network for 22 consecutive years, featuring leading original and licensed series for kids across

animation, live action and preschool formats. In 2017, Nickelodeon reached approximately 602 million cumulative television subscribers in 177 countries worldwide, excluding branded programming blocks.

9. When it premiered in 1986, DOUBLE DARE became an instant success for Nickelodeon. The show more than tripled ratings for Nickelodeon's afternoon block within a month. The original series continued to be produced for approximately seven years until February 6, 1993.

10. Over its long run, DOUBLE DARE became a household name for many children. As a testament to the show's enduring fame, in 2013 -- twenty years after the original series stopped production -- *TV Guide* named DOUBLE DARE one of the 60 greatest game shows of all time. A true and accurate copy of the *TV Guide* article is attached as Exhibit A.

11. Viacom further capitalized on the popularity of the DOUBLE DARE show by creating multiple spin-offs that followed the same game show format, including: (i) SUPER SLOPPY DOUBLE DARE, which premiered on August 2, 1987 and ran through September 8, 1989; (ii) FAMILY DOUBLE DARE, which premiered on April 3, 1988 and ran through February 6, 1993; and (iii) DOUBLE DARE 2000, which premiered on January 22, 2000 and ran through November 10, 2000.

12. Episodes of DOUBLE DARE and its spin-offs (the "DOUBLE DARE Programming") continued to air in syndication on Nickelodeon and its affiliated networks through at least 2016.

13. On November 23, 2016, thirty years after the original DOUBLE DARE series first aired, Viacom produced and aired a DOUBLE DARE anniversary special that featured vintage footage and new competitions. True and accurate copies of articles promoting the special are attached as Exhibit B.

14. The anniversary special was a success. It was watched by 1.126 million viewers,

making it the third-most viewed non-sports original cable telecast for viewers aged 18-34 that day. A true and accurate copy of the Nielsen Media Research ranking for cable programming on November 23, 2016 is attached as Exhibit C.

15. Since at least as early as May 2013, Plaintiff has sold and continues to sell compilations of the DOUBLE DARE Programming on Amazon and iTunes. True and accurate examples of the programming currently available for purchase are attached as Exhibit D.

16. In addition to television programming, Plaintiff has also used the DOUBLE DARE Mark in connection with live events. From May 21, 2012 to May 31, 2016, Viacom produced a live stage version of DOUBLE DARE at its Nickelodeon Suites Resort in Orlando, and since June 2016, Viacom has produced another live stage version of DOUBLE DARE at its Nickelodeon Universe theme park in the Mall of America. True and accurate copies of articles promoting the shows are attached as Exhibit E.

17. Viacom has also consistently used and/or licensed the DOUBLE DARE Mark on a variety of consumer goods, including DVDs, t-shirts, socks, costumes and board games. True and accurate of the goods sold are attached as Exhibit F.

18. Therefore, over the past three decades, Viacom has continuously used the DOUBLE DARE Mark in connection with television programming, live events, and a variety of consumer products. In addition, Viacom has spent significant sums advertising and promoting the DOUBLE DARE Programming. As a result, the DOUBLE DARE Mark has become instantly recognizable to a generation of children as referring to the Nickelodeon game shows.

19. In 1987 and 1988, Viacom's predecessor in interest obtained registrations for the DOUBLE DARE Mark for use in connection with, *inter alia*, production and distribution of a children's game show television program, apparel, publications, namely books about game

shows and games. Despite Viacom's continuous use of the DOUBLE DARE Mark, its registrations expired in 2001 and 2002.

## II.     The Present Dispute

20. On January 23, 2018, AI filed, based on an intent to use, application no. 87766798 with the USPTO to register DOUBLE DARE (the "AI DOUBLE DARE Application") in connection with:

(i) "interactive entertainment software, namely, video game programs, computer game programs, computer game software; pre-recorded musical sound recordings, audio recordings, audio cassettes, compact discs, digital audio discs, phonograph records, musical video recordings, video recordings, video cassettes, video discs, DVDs, CD-ROMs, all featuring educational content for infants and children; children's educational computer software featuring educational content for infants and children," in Class 9;

(ii) "clothing, namely, t-shirts, shirts, caps, pants and jackets," in Class 25;

(iii) "toys, games and playthings, namely, plush toys, stuffed toys, talking toys, toy figures, dolls, toy models, toy vehicles, water toys, wind-up toys, children's multiple activity toys, construction toys, board games, action skill games, card games, electronic action toys, electronic toy vehicles, electronic learning toys, electronic games for the teaching of children, toy musical instruments, collectible toy animals and toy figurines, puzzles, and handheld electronic game units; computer and video game apparatus, namely, video game machines for use with televisions; toy modeling compounds and accessories for use therewith, namely, molds and extruders," in Class 28; and

(iv) "entertainment, namely, a continuing children's show, and segments thereof, broadcast over television, cable television and the internet," in Class 41.

A true and correct copy of the AI DOUBLE DARE Application is attached as Exhibit G.

21. By letter dated May 3, 2018 to Viacom, AI expressed concerns about media reports that Nickelodeon would be "producing and airing a new television program under the name "Double Dare". AI claimed superior rights in DOUBLE DARE based on the AI DOUBLE DARE Application and demanded that Viacom cease and desist any efforts to produce its DOUBLE DARE show, unless it agreed to license the rights from AI.

22. In the May 3 letter, AI expressed its intent to "enforce our rights to the fullest" in the event that Viacom moves ahead with its plans to relaunch the DOUBLE DARE show without a

license from AI. A true and correct copy of AI's letter is attached as Exhibit H.

23. AI further warned Viacom that if it decided to go forward with its scheduled relaunch of the DOUBLE DARE show, it "[did] so at its own risk."

24. On May 8, 2018, Viacom responded to AI by, among other things, detailing its continuous and extensive use since 1986 of the DOUBLE DARE Mark, affirming its rights to the DOUBLE DARE Mark and requesting an agreement whereby AI withdraws the AI DOUBLE DARE Application and ceases use of the mark and any variants thereof. Viacom requested assurance by May 22, 2018. In the May 8 letter, Viacom also affirmed its intention to relaunch the DOUBLE DARE show. A true and correct copy of the May 8 letter is attached as Exhibit I.

25. On May 13, 2018, five days after Viacom's letter, AI registered the domain name <doubledarelive.com> (the "AI Domain Name"). A true and correct copy of the WHOIS information for the AI Domain Name is attached as Exhibit J.

26. On May 14, 2018, Viacom filed, based on an intent to use, the following trademark applications with the United States Patent and Trademark Office ("USPTO"):

> DOUBLE DARE (application no. 87920341) in connection with "entertainment services in the nature of a continuing competition-based program series, featuring live action, comedy and drama provided through cable television, broadcast television, internet, video-on-demand, and through other forms of transmission media; providing online information in the field of entertainment concerning television programs; entertainment services, namely, organizing, producing and presenting live events in the nature of a competition-based game show," in Class 41;
>
> NICKELODEON DOUBLE DARE (application no. 87920333) in connection with "entertainment services in the nature of a continuing competition-based program series, featuring live action, comedy and drama provided through cable television, broadcast television, internet, video-on-demand, and through other forms of transmission media; providing online information in the field of entertainment concerning television programs; entertainment services, namely, organizing, producing and presenting live events in the nature of a competition-based game show," in Class 41;
>
> DOUBLE DARE (application no. 87920329) in connection with "clothing, namely, shirts, t-shirts, sweatshirts, sweaters, blouses, pants, jeans, trousers, shorts, suits, underwear, pajamas, jackets, coats, vests, socks, stockings, tights, dresses, skirts, swimwear; headwear, namely, hats, caps, beanies, visors, headbands, bandanas; clothing accessories, namely, belts, ties,

neckties, gloves, mittens, scarves; footwear, namely, boots, shoes, sandals, slippers; Halloween costumes," in Class 25;

NICKELODEON DOUBLE DARE (application no.87920326) in connection with "clothing, namely, shirts, t-shirts, sweatshirts, sweaters, blouses, pants, jeans, trousers, shorts, suits, underwear, pajamas, jackets, coats, vests, socks, stockings, tights, dresses, skirts, swimwear; headwear, namely, hats, caps, beanies, visors, headbands, bandanas; clothing accessories, namely, belts, ties, neckties, gloves, mittens, scarves; footwear, namely, boots, shoes, sandals, slippers; Halloween costumes," in Class 25;

DOUBLE DARE (application no.87920336) in connection with "toys, games and playthings, namely, dolls and accessories therefor, action figures, action figure play sets, character figures, character figure play sets, toy figurines, plush toys, toy vehicles and accessories therefor, children's multiple activity toys, toy building sets, children's educational toys for developing cognitive skills, ride-on toys, construction toys, parlor games, puzzles, role-playing games, card games, board games, interactive board games, action skill games, action target games, electronic hand-held games for use with external display screen or monitor and electronic action toys," in Class 28; and

NICKOLODEON DOUBLE DARE (application no.87920338) in connection with "toys, games and playthings, namely, dolls and accessories therefor, action figures, action figure play sets, character figures, character figure play sets, toy figurines, plush toys, toy vehicles and accessories therefor, children's multiple activity toys, toy building sets, children's educational toys for developing cognitive skills, ride-on toys, construction toys, parlor games, puzzles, role-playing games, card games, board games, interactive board games, action skill games, action target games, electronic hand-held games for use with external display screen or monitor and electronic action toys," in Class 28.

27. On May 15, 2018, one week after Viacom's letter, AI filed an additional intent-to-use trademark application no. 87921347 for DOUBLE DARE LIVE for entertainment services, namely, "arranging and conducting live, interactive, game shows online and through mobile apps," in Class 41 (the "AI DOUBLE DARE LIVE Application"). A true and correct copy of the AI DOUBLE DARE LIVE Application is attached as Exhibit K.

28. Although Viacom had requested a response from AI by May 22, AI did not respond by that date. Instead, on June 4, 2018, after registering the AI Domain Name and filing the AI DOUBLE DARE LIVE Application, counsel for AI sent a letter to Viacom further asserting AI's rights to DOUBLE DARE, and stating that if Viacom produced, marketed and aired its recently announced DOUBLE DARE revival show, "[i]t is Armstrong Interactive's intent to fully prosecute its applications and, when they are granted, to bring action against Viacom for

infringement." A true and accurate copy of the June 4 letter is attached as Exhibit L.

29. Viacom sought an extension of time to oppose the AI DOUBLE DARE Application on June 6, 2018, which was granted the same day.

30. Viacom's reboot of the DOUBLE DARE series premiered on June 25, 2018.

### III. Defendants' Practice of Seeking to Exploit the Goodwill of Other Popular Shows

31. Upon information and belief, Defendants' actions related to DOUBLE DARE are part of their practice of seeking to register and actually registering trademarks for well-known children's shows and attempting to exploit or actually exploiting the goodwill associated with the shows. In addition to DOUBLE DARE, these shows include (1) WONDERAMA, (2) COMMUNITY AUDITIONS: STAR OF THE DAY, (3) KIDS ARE PEOPLE TOO and (4) ROMPER ROOM.

32. Upon information and belief, WONDERAMA is a children's television show that initially aired from 1955 to 1977 and from 1980 to 1987. WONDERAMA aired on its originating station, WNEW-TV in New York City, as well as in five other metropolitan markets. WONDERAMA typically aired on Sunday mornings. During the period of 1967 to 1977, WONDERAMA was hosted by Bob McAllister and it included education, music, audience participation, games, interviews, and cartoon shorts.

33. On March 21, 2008, AI filed an intent to use application for WONDERAMA for use in connection with "entertainment in the nature of an ongoing television show featuring a host, live characters, puppets, guests, games and story-telling; entertainment in the nature of personal appearances by the host and cast of a television series featuring a host, live characters, puppets, guests, games and story-telling" in Class 41 (Ser. No. 77428324). AI's application for WONDERAMA was allowed on March 9, 2010. After filing and being granted 5 extensions of time to submit a statement of use, AI was still unable to prove use of WONDERAMA and its

application was ultimately abandoned on April 8, 2013.

34. Four days after AI's first application for WONDERAMA was abandoned, on April 12, 2013, AI filed a second intent to use application for WONDERAMA for use in connection with "entertainment in the nature of an ongoing television show featuring a host, live characters, puppets, guests, games and story-telling; entertainment in the nature of personal appearances by the host and cast of a television series featuring a host, live characters, puppets, guests, games and story-telling" in Class 41. AI filed a statement of use and corresponding specimen for its second WONDERAMA application on February 7, 2017, claiming a date of first use of December 25, 2016. AI's second trademark application for WONDERAMA matured to registration on April 11, 2017 (Reg. No. 5181841).

35. AI now airs episodes of WONDERAMA via the Internet at www.wonderamatv.com.

36. Upon information and belief, COMMUNITY AUDITIONS: STAR OF THE DAY, is a television talent search program originating from Boston which aired for 37 years from 1950 to 1987.

37. On June 14, 2006, AI filed an intent to use application for STAR OF THE DAY for use in connection with, *inter alia*, "entertainment in the nature of on-going television programs in the field of talent shows" in Class 41. AI filed a statement of use and corresponding specimen for its STAR OF THE DAY application on February 26, 2008, claiming a date of first use of April 29, 2007. AI's trademark application for STAR OF THE DAY matured to registration on May 20, 2008 (Reg. No. 3433277).

38. On April 26, 2006, AI filed an intent to use application for COMMUNITY AUDITIONS for use in connection with "communications services, namely, transmitting streamed sound and audio-visual recordings via the internet; radio broadcasting; television broadcasting" in Class 38.

AI filed a statement of use and corresponding specimen for its COMMUNITY AUDITIONS application on January 23, 2008, claiming a date of first use of April 29, 2007. AI's trademark application for COMMUNITY AUDITIONS matured to registration on May 12, 2008 (Reg. No. 3429011).

39. On June 11, 2017, AI filed a second, use based application for COMMUNITY AUDITIONS for use in connection with "entertainment services in the nature of radio and television programs featuring talent contests" in Class 41, claiming a date of first use of April 29, 2007. AI's second trademark application for COMMUNITY AUDITIONS matured to registration on May 1, 2018 (Reg. No. 5457232).

40. AI began producing the show COMMUNITY AUDITIONS in 2007 and now claims, at the website it owns, www.communityauditions.com, that the show is "the nation's longest running entertainment TV series in history."

41. Upon information and belief, KIDS ARE PEOPLE TOO is an American television series that ran on Sunday mornings from 1978 to 1982 on ABC. The series was a variety/news magazine show oriented towards kids with the intention of recognizing them as people. During its four-year run, the series was nominated for five Emmy Awards and won the 1978 Emmy Award for Outstanding Children's Entertainment Series. The series included celebrity interviews, cartoons, music, and other information that appealed to children. It was hosted by Bob McAllister, who had previously hosted WONDERAMA.

42. On July 7, 2011, AI filed an intent to use application for KIDS ARE PEOPLE TOO for use in connection with "entertainment in the nature of an ongoing television show featuring a host, live characters, puppets, guests, games and story-telling; entertainment in the nature of personal appearances by the host and cast of a television series featuring a host, live characters,

puppets, guests, games and story-telling" in Class 41 (Ser. No. 85365177).  AI's application for KIDS ARE PEOPLE TOO was allowed on January 31, 2012.  After filing and being granted 5 extensions of time to submit a statement of use, AI was still unable to prove use of KIDS ARE PEOPLE TOO and its application was ultimately abandoned on March 9, 2015.

43. Approximately 6 weeks before AI's first application for KIDS ARE PEOPLE TOO was abandoned, on January 29, 2015, AI filed a second intent to use application for KIDS ARE PEOPLE TOO for use in connection with "entertainment in the nature of an ongoing television show featuring a host, live characters, puppets, guests, games and story-telling; entertainment in the nature of personal appearances by the host and cast of a television series featuring a host, live characters, puppets, guests, games and story-telling" in Class 41 (Ser. No. 86518066).  AI's second application for KIDS ARE PEOPLE TOO was allowed on August 18, 2015.  As of this filing, AI has not yet proven use of KIDS ARE PEOPLE TOO.

44. Upon information and belief, ROMPER ROOM is an American children's television series targeted to preschoolers that was franchised and syndicated from 1953 to 1994. Romper Room was also franchised internationally at various times in Canada, the United Kingdom, Japan, Finland, New Zealand and Australia.

45. On November 23, 2015, AI filed an intent to use application for ROMPER ROOM for use in connection with "clothing, namely, t-shirts, pants, caps, and jackets" in Class 25; and "entertainment in the nature of an ongoing television show featuring a host, live characters, puppets, guests, games and story-telling; entertainment in the nature of personal appearances by the host and cast of a television series featuring a host, live characters, puppets, guests, games and story-telling" in Class 41 (Ser. No. 86829166).  AI's application for ROMPER ROOM is currently suspended.

46. True and accurate copies of AI's trademark registrations and applications for the marks discussed above are attached as Exhibit M.

47. AI filed the AI DOUBLE DARE LIVE Application and registered the AI Domain Name *after* receiving Viacom's May 8 letter detailing its continuous and extensive use since 1986 of the DOUBLE DARE Mark, affirming its rights to the DOUBLE DARE Mark and requesting an agreement whereby AI withdraws the AI DOUBLE DARE Application and ceases use of the mark and any variants thereof. As such, AI's actions are in bad faith.

48. Defendants' threat of litigation particularly given their practice of appropriating the goodwill associated with past television series and Viacom's DOUBLE DARE show has created an immediate conflict, and Viacom seeks this declaratory judgment to confirm its superior rights in the DOUBLE DARE Mark.

## CLAIMS FOR RELIEF

### COUNT ONE

### (Declaratory Judgment for Non-infringement)

49. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 48.

50. Since October 6, 1986, Viacom has had priority of use of the DOUBLE DARE Mark, and over the past three decades, Viacom has continuously used the DOUBLE DARE Mark in connection with enormously popular television programming, live events, and a variety of consumer products.

51. Defendants have claimed that Viacom's relaunch of the DOUBLE DARE show on June 25, 2018, will infringe on their rights based on the AI DOUBLE DARE Application filed on January 23, 2018. Defendants have threatened to bring a lawsuit against Viacom on this basis.

52. Defendants have put Viacom in a position of having to choose between abandoning its

long-standing rights in the DOUBLE DARE Mark and not going forward with the relaunch of the DOUBLE DARE show or risking litigation.

53. An actual, present and justiciable controversy has arisen between Viacom and Defendants concerning Viacom's ownership of the DOUBLE DARE Mark.

54. Viacom seeks a declaratory judgment from this Court that Viacom owns, and therefore has priority over, the DOUBLE DARE Mark and that Viacom's relaunch of the DOUBLE DARE show does not constitute trademark infringement, dilution, unfair competition or any other related claims with respect to Defendants' claimed rights in DOUBLE DARE and DOUBLE DARE LIVE.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment as follows:

55. Enter judgment declaring that Viacom owns the DOUBLE DARE Mark, has priority over the Defendants to that Mark, and Viacom's relaunch of the DOUBLE DARE show does not constitute trademark infringement, dilution, unfair competition or any other related claims with respect to Defendants' claimed rights in DOUBLE DARE and DOUBLE DARE LIVE;

56. Award Viacom its costs and attorneys' fees in this action; and

57. Enter such other and further relief to which Viacom may be entitled as a matter of law or equity, or which this Court determines to be just and proper.

Dated: July 5, 2018

Respectfully submitted,

By: /L. Danielle Toaltoan/

DAVIS WRIGHT TREMAINE LLP
G. Roxanne Elings
(RoxanneElings@dwt.com)
L. Danielle Toaltoan
(danielletoaltoan@dwt.com)
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 489-8230
Facsimile: (212) 489-8340
*Attorneys for Plaintiff Viacom International Inc.*