UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------X
VIACOM INTERNATIONAL INC.,

          Plaintiff,

      - against -

ARMSTRONG INTERACTIVE, INC. and
CHARLES ARMSTRONG,

          Defendants,

--------------------------------------X

**MEMORANDUM AND ORDER**

18 Civ. 6117 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

     This action arises from a dispute over who owns the rights the "Double Dare" trademark - plaintiff Viacom International Incorporated ("Viacom"), who began airing a children's game show series under that name in the 1980s, or defendant Armstrong Interactive Incorporated ("Armstrong" or "Armstrong Interactive"), a recent applicant for the mark before the United States Patent and Trademark Office ("PTO"). Notwithstanding Armstrong's pending application, Viacom brought suit in this Court seeking a declaration that its claim to the Double Dare mark is valid and that its current use does not infringe upon any rights sought to be obtained by Armstrong. Armstrong Interactive and individual defendant Charles Armstrong[1] have moved to dismiss pursuant to

---

[1] Charles Armstrong is the owner, president, and chief executive officer of Armstrong Interactive. To avoid confusion with his eponymous corporation, the Court refers to the individual defendant using only his full

1

Federal Rule of Civil Procedure 12(b)(1) on the ground that the Court does not have subject matter jurisdiction to hear this case. Alternatively, Charles Armstrong moves to dismiss pursuant to Rule 12(b)(6) for failure to state a claim. Viacom cross-moves for an order for summary judgment pursuant to Rule 56.

For the foregoing reasons, we agree with defendants on the threshold question of whether a live controversy exists, and accordingly dismiss the action for lack of subject matter jurisdiction, denying as moot the parties' other requests for relief.

## I. **BACKGROUND**

In October of 1986, the cable and satellite television network Nickelodeon – a subsidiary of Viacom – debuted an "enormously popular" children's game show series under the trademark "Double Dare." Compl. ¶ 50, July 6, 2018, ECF No. 10. Plaintiff describes the premise of the show as "two teams compet[ing] to win cash prizes by answering trivia questions and completing messy stunts known as physical challenges." Id. ¶ 7. Double Dare enjoyed immediate success, and, in 1987 and 1988, Viacom's predecessor in interest obtained registration for the Double Dare mark on the federal trademark register. Id. ¶ 19. Viacom aired the original Double Dare series for approximately seven years, and in the

---

name, while all references to "Armstrong" refer solely to corporate defendant Armstrong Interactive.

decades that followed it has continued to capitalize on Double Dare's popularity through spin-offs, syndication, anniversary episodes, live events, merchandising, and the sale of compilations of Double Dare programming on content delivery services such as Amazon and iTunes. Id. ¶¶ 11–17.

Despite this alleged use, however, Viacom allowed its registrations for the mark to expire in 2001 and 2002. Id. ¶ 19. The mark remained unsought on the federal register until January 23, 2018, when defendant Armstrong Interactive, a Delaware corporation with a history of capitalizing on "the goodwill associated with past television series," id. ¶ 48, filed an intent-to-use ("ITU") application with the PTO for use of the Double Dare mark in connection with "entertainment, namely, a continuing children's show, and segments thereof, broadcast over television, cable television and the internet," among other forms of digital media. Compl. Ex. G, ECF No. 10-7. Armstrong subsequently filed an additional ITU application for the mark "Double Dare Live," Compl. Ex. K, ECF No. 10-11, and registered the domain name "doubledarelive.com," Compl. Ex. J, ECF No. 10-10.

On April 25, 2018, Viacom and Nickelodeon announced that they would be relaunching the Double Dare television program in the summer of 2018. Compl. Ex. I at 3, ECF No. 10-9. Shortly after that announcement, counsel for Armstrong sent a letter to the president of Nickelodeon, asserting that "[a]ny actions on the

part of Nickelodeon to produce such a program will infringe on the rights [Armstrong Interactive] expects to obtain upon the final granting of the trademark at issue in [its ITU application]." Id. The letter included a demand that Nickelodeon "cease and desist in all efforts to produce a program under our mark," and signaled a willingness to discuss possible licensing arrangements. Counsel concluded by warning that, "[i]n the absence of an agreement between Nickelodeon and Armstrong Interactive, we intend to enforce our rights to the fullest in the event that Nickelodeon moves ahead with its plans. Know that Nickelodeon does so at its own risk." Id.

Viacom responded to Armstrong's letter on May 8, 2018, vigorously disputing the allegations and tracing its own rights to the Double Dare mark back to the premiere of the original Double Dare series in 1986. Compl. Ex. I, ECF No. 10-9. On June 4, 2018, Armstrong replied to Viacom's May 8 letter, claiming that Viacom "failed to address our demand that Viacom cease its actions which infringe upon Armstrong Interactive's pending rights in the mark 'Double Dare,'" and that Viacom's recitation of its prior use of the mark demonstrated that it had "abandoned the mark with regards to television programming sometime between November 2000 and November 2003." Compl. Ex. L at 2, ECF No. 10-12. Armstrong further stated that:

> Viacom's actions in producing, promoting, marketing
> and, presumably, airing your recently announced
> program are unquestionably [trademark infringement,
> trademark dilution, unfair competition and false
> designation of origin]. It is Armstrong
> Interactive's intent to fully prosecute its
> applications and, when they are granted, to bring
> action against Viacom for infringement. Further, as
> we have put you on active notice, your infringement
> can be seen as nothing other than willful.

Id. at 3. "Should you continue along the path of your May 8th letter, then it appears we will have to allow other authorities to decide our respective fates." Id.

In spite of defendants' letter, Nickelodeon went ahead with the reboot of the Double Dare television series on June 25, 2018. Compl. ¶ 30. On July 6, 2018, Viacom commenced this action for a declaration that it owns the Double Dare mark and that its reboot of the Double Dare program does not infringe upon rights claimed by Armstrong in its ITU application. Defendants filed a letter seeking leave to move to dismiss the complaint on August 29, 2018, arguing that their attempt to obtain the rights to the Double Dare mark had not given rise to an Article III case or controversy and that plaintiff's pursuit of a declaration of non-infringement was thus premature. See ECF No. 20. Plaintiff responded by letter on September 10, 2018. See ECF No. 24.

On October 2, 2018, as the parties were preparing to engage in motion practice before this Court, Viacom filed its formal notice of opposition to Armstrong's ITU application with the

Trademark Trial and Appeal Board ("TTAB"), citing as grounds for its opposition "priority and likelihood of confusion," "dilution by blurring," and "dilution by tarnishment." Decl. of Howard Leib in Supp. of Mot. to Dismiss ("Leib Decl.") Ex. 7 at 2, ECF No. 38-7. Viacom further requested that the TTAB suspend its proceeding pending the outcome of this action, to which Armstrong consented. Leib Decl. Ex. 9, ECF No. 38-9.

On October 4, 2018, the Court held a teleconference to discuss the parties' pre-motion letters. On the call, defendants were asked whether they would agree not to predicate any future claim of infringement on plaintiff's use of the Double Dare mark predating defendants' successful registration with the PTO (assuming that occurred). Defendants declined to so stipulate, and on December 20, 2018, they moved forward with their motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), or, alternatively and only as to individual defendant Charles Armstrong, for failure to state a claim pursuant to Rule 12(b)(6). On January 10, 2019, plaintiff responded to defendants' motions, and filed a cross-motion for summary judgment on the issue of whether it had abandoned the Double Dare mark and whether its current use of the mark constitutes, inter alia, trademark infringement. The motions were fully briefed by February 13, 2019, and oral argument was heard on August 6, 2019.

## II. __DISCUSSION__

Where, as here, a motion to dismiss made pursuant to Rule 12(b)(1) is accompanied by other motions made under Rule 12(b)(6) or Rule 56, "the court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying [requests for relief] become moot and do not need to be determined." Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n, 896 F.2d 674, 678 (2d Cir. 1990) (quoting 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1350, p. 548 (1969)); see also Lane v. Dep't of Justice, No. 02 Civ. 06555 (ENV/VVP), 2006 WL 1455459, at *4 (E.D.N.Y. May 22, 2006).

### A. **Legal Standard**

A motion to dismiss for lack of subject matter jurisdiction must be granted "when the district court lacks the statutory or constitutional power to adjudicate" the dispute. Luckett v. Bure, 290 F.3d 493, 496 (2d Cir. 2002) (quoting Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000)). "The burden is on the party claiming declaratory judgment jurisdiction to establish that an Article III case or controversy existed at the time the claim for declaratory relief was filed." Arris Grp., Inc. v. British Telecommunications PLC, 639 F.3d 1368, 1373 (Fed. Cir. 2011); see also Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 507

(2d Cir. 1994) ("The burden of proving jurisdiction is on the party asserting it.").

Defendants' challenge to the Court's jurisdiction is based almost entirely on the allegations of the complaint and the exhibits attached thereto.  To the extent that either party proffers limited extrinsic evidence in support of their respective positions, that evidence is uncontroverted and does not require the Court to engage in fact-finding.  As such, our only task is to determine whether the allegations in the complaint, along with the limited and undisputed extrinsic evidence, affirmatively and plausibly suggests that the Court has subject matter jurisdiction to hear this case.  In so doing, we "accept[] as true all material [factual] allegations of the complaint, and draw[] all reasonable inferences in favor of the plaintiff."  Carter v. HealthPort Technologies, LLC, 822 F.3d 47, 57 (2d Cir. 2016) (internal quotation marks and citation omitted).

B. **Article III Jurisdiction in Declaratory Actions**

The Declaratory Judgment Act (the "Act") provides that, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).  The remedy provided for in the Act "is intended to minimize the danger of avoidable loss and the unnecessary accrual

of damages and to afford one threatened with liability an early adjudication without waiting until an adversary should see fit to begin an action after the damage has accrued."  10B Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2751 (4th ed.).

The Act itself, however, is merely procedural, and "does not extend the jurisdiction of the federal courts." Medtronic, Inc. v. Mirowski Family Ventures, LLC, 571 U.S. 191, 197 (2014) (internal quotation marks omitted).  This means, among other things, that a plaintiff seeking a declaration in federal court must still demonstrate that the dispute to be heard satisfies the "case or controversy" requirement of Article III.  See MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127 (2007) (observing that the phrase "case of actual controversy" in the statute limits jurisdiction "to the type of 'Cases' and 'Controversies' that are justiciable under Article III" of the U.S. Constitution).

The Supreme Court has acknowledged that it has not always "draw[n] the brightest of lines between those declaratory-judgment actions that satisfy the case-or-controversy requirement and those that do not." MedImmune, 549 U.S. at 127.  "Our decisions have required that the dispute be 'definite and concrete, touching the legal relations of parties having adverse legal interests'; and that it be 'real and substantial' and 'admi[t] of specific relief through a decree of a conclusive character, as distinguished from

an opinion advising what the law would be upon a hypothetical state of facts.'" Id. (quoting Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240–41 (1937)). Put another way, the "question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Id. (quoting Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273 (1941)).

In the context of intellectual property disputes, courts assessing the immediacy of a controversy have considered "how far in the future the potential infringement is, whether the passage of time might eliminate or change any dispute, and how much if any harm the potential infringer is experiencing, at the time of suit, that an adjudication might redress." Sandoz Inc. v. Amgen Inc., 773 F.3d 1274, 1278 (Fed. Cir. 2014). Courts have also considered whether the marks at issue are "substantially fixed," recognizing that "the greater the variability of the subject of a declaratory-judgment suit, particularly as to its potentially infringing features, the greater the chance that the court's judgment will be purely advisory, . . . [and] detached from eventual reality." Sierra Applied Scis., Inc. v. Advanced Energy Indus., Inc., 363 F.3d 1361, 1379 (Fed. Cir. 2004). Traditional jurisdictional concepts such as standing and ripeness also serve

as "helpful guide[s] in applying the all-the-circumstances test [set forth in <u>MedImmune</u>,] <u>Prasco, LLC v. Medicis Pharm. Corp.</u>, 537 F.3d 1329, 1336 (Fed. Cir. 2008), with "ripeness principles in particular reinforc[ing] the importance of contingency in the analysis." <u>Sandoz</u>, 773 F.3d at 1278; <u>see also</u> <u>MedImmune</u>, 549 U.S. at 128 n.8.

In short, our analysis focuses on "questions of timing and contingency regarding the existence and content of any needed [trademark] adjudication, as well as current concrete harms to the declaratory-judgment plaintiff from delaying an adjudication." <u>Sandoz</u>, 773 F.3d at 1278.

C. **Analysis**

Applying those principles here, we conclude that the controversy before us is of insufficient immediacy and reality to warrant a declaratory judgment. Plaintiff's basic argument is that "defendants have threatened litigation against Viacom on the theory that Viacom's reboot of the Double Dare television series violates defendants' alleged trademark rights," and therefore a live controversy exists as to whether Viacom is, in fact, infringing upon rights claimed by Armstrong. Pl.'s Opp. Br. at 12, ECF No. 45. But while the parties are no doubt at loggerheads over whether Armstrong should succeed in registering the "Double Dare" marks with the PTO, the controversy over whether Viacom's

current use of the mark infringes upon any rights Armstrong may come to possess is plainly premature, for at least two reasons.

First, there is no dispute that Armstrong does not presently have any trademark rights in "Double Dare." See, e.g., Def.'s Mem. of Law at 6 ("AI has no present rights."); Pl.'s Opp. Br. at 13. Defendants have conceded this point from the outset, describing their rights to the marks as "pending," Compl. Ex. L at 2, or "expect[ed]," Compl. Ex. H at 2, in the very cease-and-desist letters that plaintiff relies upon in making its assertion of jurisdiction. See also, e.g., Compl. Ex. L at 3 ("It is Armstrong Interactive's intent to fully prosecute its applications and, when they are granted, to bring action against Viacom for infringement.") (emphasis added). To obtain such rights, Armstrong must not only prevail in formal opposition proceedings before the TTAB – by no means a foregone conclusion given Viacom's strenuous objections to Armstrong's application – but also use the mark in commerce within the time allotted by statute (up to 3 years with extensions) in a manner sufficient to gain final registration of the mark from the PTO. See 15 U.S.C. § 1051 (d)(2). And even then, the rights it ultimately acquires may not mirror those requested in its application. Such uncertainty as to whether or when Armstrong will have enforceable rights to the Double Dare mark renders any controversy over its current use too speculative and too remote to sustain federal subject matter jurisdiction.

See <u>Matthews Int'l Corp. v. Biosafe Eng'g, LLC</u>, 695 F.3d 1322, 1330 (Fed. Cir. 2012) ("[W]hen it is unclear when any even arguably infringing activity will occur, a dispute will lack the immediacy necessary to support the exercise of declaratory judgment jurisdiction."); <u>Texas v. United States</u>, 523 U.S. 296, 300 (1998) ("A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all.") (internal quotation marks omitted).[2]

Second, and relatedly, delaying adjudication here will not cause Viacom any significant harm. "This is not a case where the plaintiff needs an adjudication of its rights so that it can conduct its business affairs without abandoning a mark or risking potential damages." <u>Bruce Winston Gem Corp. v. Harry Winston,</u>

---

[2]    The Court's conclusion is consistent with a long line of analogous patent cases, in which courts have held that enforceable rights to the intellectual property at issue is a precondition of jurisdiction in declaratory actions for non-infringement. <u>See</u> <u>Spectronics Corp. v. H.B. Fuller Co.</u>, 940 F.2d 631, 636 (Fed. Cir. 1991) ("[T]he existence of issued patent claims, presently enforceable against [the declaratory plaintiff seeking a declaration of non-infringement], are a requisite to litigation of a declaratory judgment action."); <u>GAF Bldg. Materials Corp. v. Elk Corp. of Dallas</u>, 90 F.3d 479, 482 (Fed. Cir. 1996) ("We therefore hold that a threat is not sufficient to create a case or controversy unless it is made with respect to a patent that has issued before a complaint is filed."); <u>Chamilia, LLC v. Pandora Jewelry, LLC</u>, No. 04-CV-6017 (KMK), 2007 WL 2781246, at *19 (S.D.N.Y. Sept. 24, 2007) ("Where, as here, the Complaint alleges a dispute over the validity or infringement of a possible future patent not then in existence, the district court cannot know with certainty whether a patent would issue or, if so, what legal rights it would confer and should therefore avoid issuing an impermissible advisory opinion.") (internal quotation marks omitted); <u>Cajun Servs. Unlimited, LLC v. Benton Energy Serv. Co.</u>, No. CV 17-0491, 2019 WL 1469390, at *4 (E.D. La. Apr. 3, 2019) ("Where no patent exists, no actionable rights exist, and any court's opinion would be advisory only.") (citing cases). <u>See also</u> <u>Nike, Inc. v. Already, LLC</u>, 663 F.3d 89, 96 (2d Cir. 2011) ("The principles applicable to declaratory judgment actions involving patents are generally applicable with respect to trademarks."), <u>aff'd</u>, 568 U.S. 85 (2013).

_Inc._, No. 09 CIV 7352 JGK, 2010 WL 3629592, at \*5 (S.D.N.Y. Sept. 16, 2010) (internal citation omitted). Viacom has already relaunched the Double Dare program, and is free to continue using the Double Dare marks in commerce without consequence unless and until Armstrong succeeds in registering the Double Dare or Double Dare Live marks with the PTO.[3] Nor will Armstrong's rights to the Double Dare mark, if they ever accrue, arise spontaneously, putting Viacom "in the position of one who is threatened with legal proceedings but does not know when or where the blow will fall." _Topp-Cola Co. v. Coca-Cola Co._, 314 F.2d 124, 126 (2d Cir. 1963). "[T]he rights of both parties will be determined in due course," _see id._, in proceedings that Viacom is aware of and actively participating in before the TTAB.

Viacom appears to concede in a post-oral argument letter that the "present controversy" with Armstrong does not concern infringement, but rather the issue of priority that is presently

---

[3] Given defendants' stubborn (and misguided) refusal to so stipulate on the Court's pre-motion teleconference, it bears special emphasis that even if Armstrong is ultimately successful in obtaining registration(s), it will not accrue a cause of action for infringement based upon Viacom's current use of the marks, as "there is no potential for [defendants] to recover [] for conduct that occurred prior to the registration of the subject marks." _Synergy Tech & Design, Inc. v. Terry_, 2007 WL 1288464, at \*4-5 (N.D. Cal. May 2, 2007) ("[T]here is no potential for [defendants] to recover [] for conduct that occurred prior to the registration of the subject marks."); _see also_ _Sly Magazine, LLC v. Weider Publications L.L.C._, 241 F.R.D. 527, 530 (S.D.N.Y. 2007) ("[T]here can be no liability based on retroactive registration of a trademark."); _IMAF, S.p.A., v. J.C. Penney Co., Inc._, No. 86 CV 9080, 1989 WL 54128, at \*3 (S.D.N.Y. May 15, 1989) ("[T]he plaintiff has presented no cases and the Court has uncovered no authority that supports [a] theory" whereby "once registration of a trademark is granted it applies retroactively from the date of filing.").

before the TTAB. <u>See</u> Pl.'s Ltr. at 1, ECF No. 66 ("Viacom is seeking relief from a present controversy – which party has priority in the Double Dare mark – not one that will arise in the future."). Not only is the TTAB the more appropriate forum to resolve such a dispute; absent any live controversy as to infringement, it is the only body of competent jurisdiction to do so. <u>See</u> 6 J. McCarthy, <u>Trademarks and Unfair Competition</u> § 32:53 (5th ed.) ("Courts in the Southern District of New York . . . will not find declaratory judgment jurisdiction if only registration, not use, is challenged and is in issue."); <u>Vina Casa Tamaya S.A. v. Oakville Hills Cellar, Inc.</u>, 784 F. Supp. 2d 391, 397 (S.D.N.Y. 2011) ("The TTAB is the appropriate forum to resolve the only concrete dispute between the parties — that is, the dispute over registration of the [mark at issue]."); <u>Bruce Winston</u>, 2010 WL 3629592, at *5 (finding no jurisdiction existed "where the defendants do not object to the plaintiff's current use of its mark, and the only immediate and definite controversy is over the registration of that mark"); <u>WundaFormer, LLC v. Flex Studios, Inc.</u>, No. 15-CV-4802 JSR, 2015 WL 7181249, at *2 (S.D.N.Y. Nov. 10, 2015) ("[T]here is no live controversy between the parties as to infringement and defendants have no immediate interest in the validity of [plaintiff's mark] as long as that remains so."), <u>rev'd and remanded on other grounds</u>, 680 F. App'x 925 (Fed. Cir. 2017).

In its opposition papers, Viacom takes the position that the absence of an imminent infringement suit does not preclude the finding of a justiciable controversy. In so arguing, it makes much of the Supreme Court's decision in MedImmune, in which the Court held that a patent licensee was not required "to break or terminate its [license agreement] before seeking a declaratory judgment in federal court that the underlying patent is invalid, unenforceable, or not infringed." 549 U.S. at 137. But while MedImmune no doubt "lowered the threshold" for plaintiffs in such actions by rejecting the "reasonable apprehension of suit" requirement, AARP v. 200 Kelsey Assocs., LLC, 06-cv-81 (SCR) 2009 WL 47499, at *6 (S.D.N.Y. Jan. 8, 2009) (Lynch, J.), it hardly opened the jurisdictional floodgates to plaintiffs who might infringe upon hypothetical or speculative rights at some point in the future. Rather, the decision stands for the far narrower proposition that where a plaintiff is coerced into taking some action that renders "what would otherwise be an imminent threat [of litigation] at least remote, if not nonexistent," jurisdiction may still exist so long as the requirements of Article III are met. MedImmune, 549 U.S. at 128 (emphasis added); see also 12 Moore's Federal Practice - Civil § 57.22 (2019) (citing MedImmune for the proposition that "a party need not actually expose itself to liability by refusing to perform a disputed obligation before seeking an adjudication of the validity of that obligation, so

long as there is an imminent threat that litigation would ensue if the obligation were breached.") (emphasis added). Thus, the licensee disputing the scope of the licensor's patent could bring suit for a declaration of non-infringement, even if the licensee eliminated the threat that it would be sued for infringement by continuing to make royalty payments to the licensor under protest. Id. at 128. That scenario is decidedly unlike the case before this Court, where the threat of litigation has been made non-existent not by some coerced conduct, but rather by the simple fact that defendants have yet to acquire (and may never acquire) rights upon which to base an infringement suit. The significance of this distinction surely survives MedImmune, and is consistent with the holdings of several courts, including the Second Circuit, that "the threat of future litigation remains relevant in determining whether an actual controversy exists." Nike, 663 F.3d at 96; see also, e.g., Benitec Australia, Ltd. v. Nucleonics, Inc., 495 F.3d 1340, 1344 (Fed. Cir. 2007) ("A useful question to ask in determining whether an actual controversy exists is what, if any, cause of action the declaratory judgment defendant may have against the declaratory judgment plaintiff[.]"); City State Entm't, LLC v. Lemay, No. 2:14-CV-329, 2014 WL 12603504, at *3 (E.D. Va. Sept. 24, 2014).

    Indeed, the Court is aware of no case in this circuit – pre- or post-MedImmune – in which a plaintiff has brought suit for a

17

declaration of non-infringement of hypothetical trademark rights, let alone secured a favorable ruling on the existence of subject matter jurisdiction, dispelling the notion that MedImmune represents the sea change plaintiff makes it out to be. Even expanding the scope of our search beyond the Second Circuit yields just a single case: Young v. Vannerson, 612 F. Supp. 2d 829, 845 (S.D. Tex. 2009). And even assuming that Young was properly decided,[4] it is inapposite given that the Young defendants asserted presently enforceable rights and had taken meaningful steps to prepare for use of the marks in commerce, unlike defendants in this case.

---

[4]    Critical to the court's finding of jurisdiction in Young was its application of the so-called "intent and ability" test, which measures whether a potential infringer is "engaged in meaningful preparation, such that it is actively preparing to produce the article in question. This is the last point before the point of no return." Starter Corp. v. Converse, Inc., 84 F.3d 592, 596 (2d Cir. 1996). However, rather than apply the test to assess the potential infringer's (plaintiff's) conduct, as it has been traditionally applied, the court in Young assessed the "meaningful preparation[s]" of the purported rightsholders (defendants). This strikes the Court as inconsistent with at least part of the Second Circuit's rationale for adopting the test in the first place. See Starter Corp., 84 F.3d at 595-596 (reasoning that the test was appropriate because it would allow potential infringers to bring suits for non-infringement without actually "subject[ing] [themselves] to considerable liability for a violation of the Lanham Act before its right to even engage in this line of commerce could be adjudicated."). And the distinction is not without a difference; had the court in Young applied the test to assess plaintiff's conduct, it would have likely found that plaintiff lacked "a 'sufficient intent and apparent ability' to use the [marks at issue] in an infringing manner" given the absence of enforceable rights upon which to infringe. Bruce Winston, 2010 WL 3629592, at *4 (emphasis added) (finding no jurisdiction where defendants did not object to plaintiff's present use of the mark). That is certainly the conclusion this Court would come to as to Viacom's current use of the mark. In any event, given that Armstrong's preparations to use the mark are limited to the registration of a single domain name, the dispute at hand fails under either application of the test.

18

Finally, at oral argument and in its subsequent letter of August 7, 2019, plaintiff urged the Court to review LightMed Corp. v. Ellex Med. Pty. Ltd., No. CV139205PSGPLAX, 2014 WL 12586075, at *11 (C.D. Cal. May 20, 2014), where the Federal Circuit found an actual controversy between LightMed and Ellex regarding whether Ellex had provisional rights in one of its patent applications. As an initial matter, it is telling that plaintiff relies so heavily on a ruling in which the court, while finding jurisdiction, admitted that it was "skeptical that there is an actual controversy between the parties here." Id. at *12. In any event, the concept of provisional rights – which allow, in certain circumstances, a successful patent applicant to obtain royalties from those who "infringed" between the time that the application was published and the time that the patent was ultimately issued, see 35 U.S.C. § 154(d) – does not exist in the trademark space, and thus has no bearing on the Court's jurisdictional analysis here. What is relevant for our purposes is the LightMed court's analysis of whether it had subject matter jurisdiction to make a declaration of non-infringement with respect to non-provisional rights described in defendant's pending patent application. The court found that it did not, reasoning that it could not "determine whether LightMed will infringe Ellex's patent based on the [pending application] because no patent has been issued, and it is possible that no patent may ever be issued." Id. at *10. See also id. at

*9 (concluding that "it is hard to see how this claim could raise a justiciable case or controversy" in light of plaintiff's concession that defendant possessed no presently enforceable rights). Thus, to the extent that it is relevant to the outcome of this case, plaintiff's proffered authority counsels against a finding of jurisdiction.

In sum, given the lack of presently enforceable rights, the substantial uncertainty surrounding when, if ever, Armstrong will acquire such rights, and the absence of any concrete harm suffered by Viacom from delaying adjudication, we conclude that plaintiff has failed to allege facts showing a controversy "of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." MedImmune, 549 U.S. at 127. To be clear, this decision should not be read as an endorsement of defendant's litigation tactics or business practices, or an assessment of the weight of the evidence plaintiff has submitted in support of its motion for summary judgment (which appears substantial). It is simply an acknowledgment of the limits of this Court's jurisdiction, and a recognition that "[t]he Declaratory Judgments Act may not be used [] to remove a controversy from a forum where it properly belongs." Topp-Cola, 314 F.2d at 126.

For these reasons, defendants' motion to dismiss this action for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) is granted. Individual defendant Charles Armstrong's motion to

dismiss for failure to state a claim and plaintiff's cross-motion for summary judgment are denied as moot. The Clerk of Court is respectfully directed to enter judgment for defendants and terminate this case and any motions pending therein.

Dated:    New York, New York
          August *19*, 2019

                                    _Naomi Reice Buchwald_
                                    NAOMI REICE BUCHWALD
                                    UNITED STATES DISTRICT JUDGE

21